```
                UNITED STATES DISTRICT COURT
                          FOR THE
                   DISTRICT OF VERMONT
```

| | |
|---|---|
| Edwin Rodriguez, | : |
|     Plaintiff, | : |
| | : |
| v. | :   File No. 1:07-CV-58 |
| | : |
| James Polk, Captain | : |
| Walton, Captain Woods, | : |
| Officer Norfolk, Officer | : |
| Billingsley, Lieutenant | : |
| Anderson, John Doe #1, | : |
| John Doe #2, Jane Doe #1, | : |
| and Nurse Curry, | : |
|     Defendants. | : |

<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>
(Papers 22, 25 and 27)

*Pro se* plaintiff Edwin Rodriguez, a Vermont inmate currently incarcerated out-of-state, brings this action claiming, *inter alia*, excessive force and inadequate medical care by prison personnel. During the period of time in question, Rodriguez was incarcerated at a privately-owned correctional facility in Tennessee. All defendants named in the complaint worked at that facility.

Pending before the Court are defendants' motions to dismiss or, in the alternative, for transfer to federal court in Tennessee. Also pending is plaintiff's motion to amend his complaint to add the Commissioner of the Vermont Department of Corrections and the Warden of the

Tennessee facility. For the reasons set forth below, the motion to add the Commissioner as a defendant is DENIED, and I recommend that the remainder of the case be TRANSFERRED to the United States District Court for the Western District of Tennessee.

## Factual Background

For purposes of the defendants' motions to dismiss, the facts alleged in the complaint will be accepted as true. The events relevant to this suit began in March 2006, at which time Rodriguez was an inmate at the West Tennessee Detention Facility ("WTDF"). WTDF is a correctional facility operated by Corrections Corporation of America ("CCA"). The State of Vermont contracts with CCA to house some of its prisoners out-of-state.

On March 27, 2006, Rodriguez was working as a teacher's aide at WTDF. He was asked by the teacher to go to the living units to retrieve those students who were late for class. As he was leaving the living units, defendant Linda Curry began yelling at him "assuming the Plaintiff was late for his job." (Paper 3, Complaint, at 11). The two exchanged hostile words, and Rodriguez was placed in segregation.

Rodriguez was initially placed in a cell with an inmate, Uriel Anderson, who was known for violent and threatening behavior. Shortly thereafter, Anderson used a metal bar to break a window in the cell. CCA officers responded by placing Anderson and Rodriguez in handcuffs and moving them to the segregation showers. The inmates remained in the showers for approximately ten hours while maintenance personnel fixed the cell window.

While in the segregation showers, Rodriguez asked several times to be placed in a different cell. His requests were denied. The next day, Anderson broke the cell window again. Anderson also broke the cell's sprinkler system, sending water throughout the cell and destroying Rodriguez's pictures and legal work.

The two were again placed in the segregation showers for over ten hours while the damage was repaired. Rodriguez informed defendant Norfolk that he "was not going to go back into a cell with I/M Anderson due to the serious risks involved." Id. at 14. Norfolk called defendant Walton, who authorized placing Rodriguez into a cell with inmate Roy Ashley. Ashley had been placed in administrative segregation due to violent and threatening

behavior toward staff and inmates.

When they arrived at Ashley's cell, Ashley informed correctional officers that he would not "cuff up" and that he would assault Rodriguez if forced to share a cell with him. Norfolk asked Rodriguez what he would do if attacked, and Rodriguez responded that he would defend himself. Norfolk explained that he did not want a violent conflict between inmates, and returned Rodriguez to the segregation showers. Rodriguez remained in the showers for several more hours.

Eventually, Rodriguez was given the choice of remaining in the showers or being placed in a cell with either Anderson or Ashley. Rodriguez decided to accept "the lesser of two evils" and agreed to be placed with Anderson "so he could sleep due to his complete exhaustion from having to wait for long periods of time in the segregation showers." Id. at 16.

The next day, Rodriguez explained his situation to WTDF Chief of Security James Polk. Polk allegedly told Rodriguez that there was nothing he could do. When Rodriguez pleaded that Anderson was a continuing threat to his safety, Polk ignored his plea.

4

That same day, March 29, 2006, Anderson again broke the cell window. He and Rodriguez were removed from their cell and placed in the showers, this time for approximately 12 hours. During that time, Anderson spit on a correctional officer, made threatening comments, and spread feces throughout the shower.

When Rodriguez again complained about being returned to a cell with Anderson, a correctional officer advised him to file a grievance. Rodriguez did so, but acquiesced to being placed with Anderson one more time so that he could get some rest.

On March 30, 2006, Anderson again broke the cell window. Defendants Walton, Anderson, Billingsley and John Doe #1 responded. Walton ordered that the cameras be shut off so that the film would not capture the use of chemical agents. Notwithstanding Rodriguez's offer to be completely compliant, the correctional officers introduced pepper spray through the bottom of the cell door. Rodriguez and Anderson were left in the cell for approximately two to three minutes before they were removed. The pepper spray left Rodriguez in extreme pain.

Correctional officers then took Rodriguez to "medical," but Rodriguez asked to be returned to segregation so that he could wash the mace off of his face. After Rodriguez threatened to get violent if not allowed to take a shower, he was taken to a shower and promptly washed himself off "as quickly as possible to stop the burning sensations." Id. at 20. Rodriguez then began to vomit, but was told that "medical" now refused to see him.

Thereafter, prison personnel again suggested placing Rodriguez in a cell with violent inmate Ashley. Rodriguez protested, and insisted he would remain in the segregation showers until a representative from Vermont DOC arrived at the prison. The defendants allegedly chose to place Rodriguez in "protective custody" against his will. When Rodriguez refused to sign the paperwork required for protective custody, he was placed in another cell. Rodriguez claims that other cells had been available throughout his "three day ordeal," and that events set forth in the complaint could have been avoided simply by placing him in one of those cells. (Paper 3-3 at 3).

The complaint sets forth several causes of action, including excessive use of force with respect to the use of pepper spray, denial of medical care after the pepper spray incident, and failure to protect and provide reasonable safety from fellow inmates. For relief, Rodriguez seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## Discussion

I. <u>Motion to Amend Complaint</u>

Before addressing issues related to dismissal or transfer, the Court will first consider Rodriguez's motion to amend his complaint. If granted, the motion would add DOC Commissioner Rob Hofmann and WTDF Warden Marcel Mills as defendants. The proposed claims against these defendants are that they failed to adequately train and supervise their staff. Rodriguez seeks to sue both defendants in their individual capacities.

A motion to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a); <u>see</u> <u>also</u> <u>Oneida Indian Nation of New York v. City of Sherill</u>, 337 F.3d 139, 168

7

(2d Cir. 2003), rev'd on other grounds, 544 U.S. 197 (2005). When deciding whether to permit joinder of a party, courts apply this same standard. See Soler v. G & U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980). Notwithstanding the liberality of the rule, "it is within the sound discretion of the court whether to grant leave to amend." John Hancock Mutual Life Insurance Co. v. Amerford International Corp., 22 F.3d 458, 462 (2d Cir. 1994). One circumstance that justifies denial of a motion for leave to amend is a determination that the amendment would be futile. See, e.g., Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006).

Here, the defendants argue that the proposed claims against Hofmann and Mills would be dismissed at the outset for lack of merit, and are therefore futile. Specifically, they argue that neither of these defendants was personally involved in any wrongdoing, and that personal involvement is required for liability under § 1983.

Rodriguez is asking for declaratory, injunctive and monetary relief. With respect to his requests for declaratory and injunctive relief, such relief is

unavailable in suits against officials in their individual capacities. See LeBron v. Swaitek, 2007 WL 3254373, at *7 (N.D.N.Y. Nov. 2, 2007) (citing Ziemba v. Armstrong, 2004 WL 173447, at *2 (D. Conn. July 30, 2004)). As to damages, "[i]t is well settled in this Circuit that personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). While "*respondeat superior* cannot form the basis for a § 1983 claim," Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998), the personal involvement of a supervisory defendant in a § 1983 claim may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights

of inmates by failing to act on information indicating that unconstitutional acts were occurring. See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

It is clear from the complaint that Hofmann had no direct involvement in the events in question. Rodriguez claims that Hofmann "should know everything that goes on in an inmate's life," and that Hofmann's "agents" failed to keep him safe. (Paper 27 at 3). There is no indication, however, that Hofmann had actual knowledge of what was happening to Rodriguez. Nor is there any allegation that Rodriguez was being treated according to a DOC policy or custom. Moreover, Hofmann will not be held liable for failing to properly supervise CCA employees who committed allegedly wrongful acts. Given § 1983's requirement of personal involvement, the facts alleged in the amended complaint could not result in liability for Commissioner Hofmann, and the motion to amend to add him as a party is, therefore, DENIED.

With respect to Warden Mills, he is a Tennessee defendant and may have had direct supervisory responsibility for some of the defendants. I therefore

recommend that the Court defer any ruling on his joinder until after the case has been transferred, for the reasons set forth below, to Tennessee. See Lyon v. Cornell University, 1998 WL 226193, at *2 (S.D.N.Y. May 4, 1998) (collecting cases wherein pending motions were sent to transferee court "to decide important issues that are critical [to] the disposition of the case").

II. Motion to Dismiss Or Transfer

The defendants argue that dismissal of this case is warranted or, in the alternative, that venue in this Court is improper. Prior to determining proper venue, a court may not reach the merits of the case. See Joyner v. Reno, 466 F. Supp. 2d 31, 40 (D.D.C. 2006). Therefore, the Court will first assess the defendants' venue argument.

When a case is commenced in an improper venue, Section 1406(a) requires the Court to either dismiss it or, "if it be in the interest of justice," transfer the case to a district in which it could have been brought. 28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." Minnette v. Time Warner, 997 F.2d 1023,

1026 (2d Cir. 1993). "On a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum is proper falls on the plaintiff." Indymac Mortgage Holdings, Inc. v. Reyad, 167 F. Supp. 2d 222, 237 (D. Conn. 2001).

In cases involving questions of federal law, such as civil rights claims under § 1983, venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b); see also Amaker v. Haponik, 198 F.R.D. 386, 391 (S.D.N.Y. 2000). In addition to jurisdiction on the basis of a federal violation, Rodriguez submits that this Court has diversity jurisdiction. In that event, the controlling statute is 28 U.S.C. § 1391(a), which provides that venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial

12

> district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1381(a).

Under subsection one of each provision, the proper venue is Tennessee. With the exception of Commissioner Hofmann, each of the original and proposed defendants worked at WTDF during the relevant time period. Although their home addresses are not set forth in the complaint, it appears likely that, given their employment in Tennessee, each is a Tennessee resident. Accordingly, pursuant to § 1391(a)(1) and (b)(1), venue is proper in that state.

The next subsection of each statute determines venue based upon where "a substantial part of the events or omissions giving rise to the events occurred . . . ." 28 U.S.C. § 1391(a)(2), (b)(2). The Second Circuit has instructed lower courts to "take seriously the adjective 'substantial'" in construing "the venue statute strictly." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005). In this case, the principal events took place at the correctional facility in Tennessee. Accordingly, venue is most appropriate in that state

13

under subsection (2) as well.  See Lee v. Corrections Corp. of America, 2007 WL 4225405, at *2-*3 (D. Hawaii Nov. 26, 2007); Basargin v. Corrections Corp. of America, 2005 WL 2705002, at *2 (D. Alaska Oct. 17, 2005); Sadler v. Rowland, 2004 WL 2061127, at *5 (D. Conn. Sept. 13, 2004) (action brought by Connecticut prisoner against prison personnel in Virginia transferred to Virginia).

Because this action could have been brought in Tennessee, subsection (3) of both §§ 1391(a) and (b) is inapplicable.  See Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3802.1 n. 26 (Supp. 2003) (citing F.S. Photo, Inc. v. Picturevision, Inc., 48 F. Supp. 2d 442, 448 (D. Del. 1999)).

Having determined that venue is most appropriate in Tennessee, the Court must decide whether the case should be dismissed, or whether the interests of justice call for a transfer.  "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 435 (2d Cir. 2005) (citation omitted).  In making this determination, consideration should be given to the ultimate goal of the "expeditious and orderly

adjudication of cases and controversies on their merits." Goldlawr, Inc. v. Heinman, 369 U.S. 463, 466-67 (1962).

Rodriguez commenced this action nearly one year ago. Because of his *in forma pauperis* status, service has been initiated by the U.S. Marshals Service. To dismiss the case and require re-filing in Tennessee would result in unnecessary duplication of effort on the part of the government, additional effort for the plaintiff, added expense for the defendants, and unnecessary delay for all parties.

Furthermore, "[a] 'compelling reason' for a transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on re-filing in the proper forum." Daniel, 428 F.3d at 435 (quoting Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999)). The relevant events in this case occurred nearly two years ago, and Tennessee generally applies a one-year limitations period to § 1983 claims. See Berndt v. State of Tennessee, 796 F.2d 879, 883 (6th Cir. 1986). Consequently, if the Court were to dismiss this case, Rodriguez's claims would likely be time-barred. I therefore recommend that, in the interest of justice,

15

this case be TRANSFERRED to the United States District Court for the Western District of Tennessee.

## Conclusion

For the reasons set forth above, Rodriguez's motion to amend his complaint (Paper 27) is DENIED with respect to Commissioner Rob Hofmann. I recommend that the defendants' motions in the alternative for change of venue (Papers 22 and 25) be GRANTED and that the remainder of this case be TRANSFERRED to the United States District Court for the Western District of Tennessee pursuant to 28 U.S.C. § 1406.[1]

Dated at Burlington, in the District of Vermont, this 7th day of February, 2008.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file

---

[1] Because a motion to transfer venue is non-dispositive, I have authority under 28 U.S.C. § 636 to issue an order on the motion. However, because the transfer motion is raised in conjunction with a motion to dismiss, I have chosen to format my opinion as a report and recommendation. See Glover v. Goord, 2007 WL 2454193, at *5 n.4 (N.D.N.Y. Aug. 22, 2007).

objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).